# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RALPH A. SALAS,

   **Plaintiff,**

v.             **No. CIV 99-0857 BB/LCS**

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

   **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

  **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed April 27, 2000. The Commissioner of Social Security issued a final decision denying Plaintiff's application for disability insurance benefits. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well-taken and recommends that it be **DENIED**.

## PROPOSED FINDINGS

  1.  Plaintiff, now forty-nine years old, filed his application for disability insurance benefits on May 7, 1997, alleging a disability which commenced April 1, 1988, due to constant pain in his spine, knees, shoulder and chest. (R. at 102-104; 138.) He has a high school education with one year of college. (R. at 155.) His past relevant work was as a grocery store department manager, stock clerk, and cashier. (R. at 51-52.)

2.	Plaintiff's application for disability insurance benefits was denied at the initial level on July 22, 1997, (R. at 78), and at the reconsideration level on October 24, 1997. (R. at 84.) Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on November 24, 1997. (R. at 94.) The ALJ held a hearing on May 4, 1998, at which Plaintiff appeared and was represented by counsel. (R. at 23.) At the hearing, the ALJ received testimony from Plaintiff and Bertina Telles, a vocational expert (VE). (R. at 23.)

3.	The ALJ issued his decision on August 26, 1998. (R. at 13.) The ALJ determined that Plaintiff had disability insured status through December 31, 1993. (R. at 13.) The ALJ analyzed Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 1, 1988. At the second step, the ALJ determined that Plaintiff had impairments consisting of lumbar and cervical disc and joint disease and an unstable back. At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments has not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-.1599. *See id.* The ALJ then found that Plaintiff had the residual functional capacity for a wide range of light to sedentary work. Relying on the testimony of the VE, the ALJ determined at step four that Plaintiff was able to perform his past relevant work as a food sales clerk, cashier, and checker. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

4.	Plaintiff filed a request for review of the ALJ's decision. (R. at 8-9.) On June 11, 1999, the Appeals Council denied the request for review. (R. at 5-6.) Hence, the decision of the ALJ

became the final decision of the Commissioner for judicial review purposes. Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

5.      The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6.      In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson v. Sullivan*, 987 F.2d at 1487.

7.      At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

**Administrative Record**

8.  In November, 1985, Plaintiff fell at work and injured his lower back and neck. (R. at 191.) Plaintiff continued to work on an intermittent basis until April 1, 1988. (R. 102;192.) During 1986, Plaintiff was treated by Patricia Davis, M.D., for back pain and other complaints. (R. at 235.)

9.  On January 18, 1988, Sidney Schultz, M.D., an orthopedic surgeon, observed that Plaintiff's neck x-rays were completely within normal limits. (R. at 195.) Examination revealed a complete range of cervical motion, no muscle spasms and no tenderness in the neck region. (*Id.*) Dr. Schultz found no neurological abnormalities relative to the lumbar area but a mechanically unstable lower back. (*Id.*) Dr. Schultz believed that Plaintiff was unable to return to any type work that would require repetitive bending, lifting or working in cramped or awkward positions, but that he was physically fit for light and sedentary type work with a weight lifting restriction of fifteen to twenty pounds. (R. at 196.)

10.  On August 16, 1989, Dr. Schultz observed that Plaintiff sat comfortably and walked without a limp. (R. at 183). Plaintiff reported discomfort when he bent over but was able to bend until his fingertips were about four inches from the ground. (R. at 184). He had no muscle spasms and was able to do a sit up. (R. at 183.) Neck and back x-rays were normal. Dr. Schultz reiterated that Plaintiff was able to perform light and sedentary work, but should avoid excessive bending, heavy

lifting, and awkward or cramped positions. (R. at 186.) Dr. Shultz gave Plaintiff a whole body impairment rating of 25% and recommended that he perform a daily exercise program observed that he could be trained to work as an x-ray technician. (*Id.*)

11.     On June 18, 1992, Patricia Davis, M.D. noted that Plaintiff had an "old back injury" but that he could flex his back 80 degrees. (R. at 229.) On August 31, 1992, Dr. Davis noted that Plaintiff requested a "back doctor." (R. at 228.) He complained of left ankle pain and some back spasms. (*Id.*) X-rays of Plaintiff's left ankle and knee were normal. (R. at 227.) Dr. Davis diagnosed chronic low back strain and mild left ankle sprain. (R. at 228). On November 8, 1994, Plaintiff complained that his knee gave out. (R. at 226.) Dr. Davis diagnosed a sprained left ankle. (*Id.*)

12.     In July, 1995, Plaintiff was in an auto accident and suffered a flexion/extension injury to his neck. (R. at 198.) On January 20, 1997, Dr. Reeve performed an IME in connection with the neck injury. (*Id.*) Plaintiff described occasional soreness in his neck. (*Id.*) Physical and neurological examinations were normal. (R. at 200.) Dr. Reeve found that Plaintiff was "essentially asymptomatic" with "occasional twinges of pain" which were relieved by rest and Motrin. (R. at 201-02.) Dr. Reeve found that Plaintiff had a zero percent impairment rating. (R. at 202)

13.     On January 24, 1997, Plaintiff fell off a horse and injured his back. (R. at 225.) An x-ray revealed an acute L2 fracture and compression deformity. (R. at 224.) A May 19, 1997, MRI showed a disc bulge at L1-2 and a 25% loss of L1 normal, anterior body height. (R. at 223.)

14.     On July 22, 1997, Nancy Nickerson, M.D., a medical consultant, reviewed the medical evidence to determine Plaintiff's limitations as of December 31, 1993, the date his insured status expired. (R. at 203-210) Based on reports from Dr. Schultz, Dr. Reeve, and Dr. Davis, Dr.

Nickerson opined that, as of December 31, 1993, Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and walk for at least two hours, and sit about six hours. (R. at 204.) In addition, Dr. Nickerson noted that Plaintiff had postural and manipulative limitations. (R. at 205-06.)

15. On May 4, 1998, Dr. Davis completed a functional capacity questionnaire. (R. at 177-181). Dr. Davis found that Plaintiff was able to sit for thirty minutes, stand for twenty minutes and could sit and stand/walk for less than two hours out of an eight-hour work day. (R. at 179.) Dr. Davis wrote that he needed to stay in a supine position and that his legs should be elevated to hip level when sitting (*Id.*) Dr. Davis also wrote that he could "never" lift any weight. (R. at 180.) Dr. Davis stated that Plaintiff was incapable of even low stress jobs and that his "unremitting symptoms demand and unstructured, undemanding environment." (R. at 178.) Dr. Davis wrote that Plaintiff was depressed due to a "recent marital loss." (*Id.*)

16. Plaintiff testified that he could sit up to two hours, walk 100 yards, stand fifteen minutes, lift twenty to twenty-five pounds with pain, and lift ten to fifteen pounds without pain. (R. at 39.) Plaintiff reported that he played basketball and fished. (R. at 60-62.) The VE testified that Plaintiff could perform his past work as generally performed in the national economy. (R. at 70.)

**Discussion**

17. Plaintiff raises the following arguments in support of his Motion to Reverse or Remand the Administrative Agency Decision. First, Plaintiff contends that the ALJ erred in failing to accord "controlling weight" to the opinion of the treating physician. Second, Plaintiff argues that there is insufficient evidence to support the ALJ's finding that he has the residual functional capacity for the full range of sedentary to light work. Third, Plaintiff asserts that the ALJ's hypothetical

questions were not supported by the medical record. Fourth, Plaintiff objects to the ALJ's finding that he has the residual functional capacity to return to his past work. Finally, in his Reply Brief, Plaintiff contends that his application for Disability Insurance Benefits was also an application for Supplemental Security Income.

18.     Plaintiff raised the final issue only in his Reply Brief. He did not contend that his Application for Disability Insurance Benefits was also an application for supplemental security income in his brief in chief. Issues raised for the first time in a reply brief will not be considered. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir.1993). Furthermore, the record contains no evidence that Plaintiff's income was low enough to qualify for supplemental security income. *See* 42 U.S.C. §1382(a); 20 C.F.R. §416.110. Hence, Plaintiff's application for Disability Insurance Benefits shall be deemed an application for disability insurance benefits, and not an application for supplemental security income.

19.     Plaintiff argues the ALJ erred in failing to accord "controlling weight" to the opinion of Dr. Davis. A treating physician may offer an opinion about the claimant's impairments and the Commissioner will accord "controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994). While a treating physician may also opine that a claimant is totally disabled, that opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *Id.;* 20 C.F.R.§ 404.1527(e)(2). A treating physician's opinion may be disregarded "if it is brief, conclusory, and unsupported by medical evidence." *Frey v. Brown*, 816 F.2d 508, 513 (10th Cir.1987). When disregarding the opinion of a treating physician, the ALJ must

give specific, legitimate reasons. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995).

20.     The ALJ specifically considered Dr. Davis' opinion of May 4, 1998, but did not accord it full weight because is was unsupported by the record and inconsistent with other medical findings. (R. at 14.)  This determination is supported by substantial evidence.  Dr. Davis' medical records consist of only brief office notes.  There is no indication that Dr. Davis performed any diagnostic tests before December 31, 1993. There is also no indication that Dr. Davis' May 4, 1998 opinion assessed Plaintiff's condition before December 31, 1993. In fact, Dr. Davis acknowledged that Plaintiff's condition worsened after his fall from the horse in January, 1997. (R. at 238.)  Substantial evidence supported the ALJ's finding that Dr. Davis's report was brief, conclusory and unsupported by the record.

21.     In addition, the ALJ specifically disregarded Dr. Davis' opinion because it was inconsistent with other medical findings.  Dr. Reeve observed that Plaintiff was "essentially asymptomatic" with "occasional twinges of pain" relieved by rest and Motrin. (R. at 201-02.)  On January 18, 1989, Dr. Schultz observed that Plaintiff sat comfortably and walked without a limp and that neck and back x-rays were normal. (R. at 183).  Dr. Schultz found that Plaintiff was able to perform light and sedentary work, but should avoid excessive bending, heavy lifting, and awkward or cramped positions. (R. at 186.)  Interestingly, in a letter of November 26, 1997, Dr. Davis concurred with Dr. Schultz's report stated that it presented "an excellent overview of [Plaintiff's] situation." (R. at 238.)  In this respect, Dr. Davis' opinion is inconsistent with her own prior statement.  Moreover, Plaintiff testified that he could sit up to two hours, walk 100 yards, stand fifteen minutes, lift twenty to twenty-five pounds with pain, and lift ten to fifteen pounds without

pain.  (R. at 39.)  Thus, the May 4, 1998 report of Dr. Davis is inconsistent with Plaintiff's own testimony.  The ALJ gave specific, legitimate reasons for disregarding the Dr. Davis' opinion that Plaintiff is disabled.  The ALJ did not err in failing to accord "controlling weight" to the brief, conclusory opinion of Dr. Davis.

22.    Although not raised by Plaintiff, the Court notes that in the May 4, 1998 functional capacity questionnaire, Dr. Davis wrote that Plaintiff was depressed due to a recent marital loss and therefore incapable of performing even low stress jobs. (R. at 177-178.)  Plaintiff testified that his emotional problems began in the fall of 1997.  (R. at 45.)  The record does not indicate Plaintiff suffered from any emotional impairment prior to the expiration of his disability insured status. Substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment.

23.    Plaintiff argues that there is insufficient evidence to support the ALJ's finding that he has the residual functional capacity for the full range of sedentary to light work.  Light work involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds.  *See* 20 C.F.R. §404.1567 (b).  Although the weight lifted may be very little, this category includes jobs which require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm and leg controls. *See id.*

24.    In arriving at his determination that Plaintiff retained the residual functional capacity to perform the full range of light work, the ALJ relied on the records and reports of Dr. Schultz, Dr. Reeve, and Dr. Nickerson. (R. at 13-15.)  Dr. Schultz opined that Plaintiff was able to perform light and sedentary work, but should avoid excessive bending, heavy lifting, and awkward or cramped positions. (R. at 186.)  Dr. Reeve found that Plaintiff was "essentially asymptomatic" with "occasional

twinges of pain" which were relieved by rest and Motrin as assigned. (R. at 201-02.) Dr. Nickerson determined that, as of December 31, 1993, Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and walk for at least two hours, and sit for about six hours, but that he had postural and manipulative limitations. (R. at 204-06.) With the exception of Dr. Davis' May 4, 1998 questionnaire, the substantial medical evidence of record established that Plaintiff retained the residual functional capacity to perform light work as defined by 20 C.F.R. §404.1567 (b) as of December 31, 1993. The ALJ's finding that Plaintiff was capable of the full range of light work as of December 31, 1993, the date his disability insured status expired, is supported by substantial evidence.

25.     Plaintiff next asserts that the ALJ's hypothetical questions were not supported by the medical record. Hypothetical questions posed to a vocational expert need only reflect impairments and limitations supported by the record. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir.1996) The ALJ asked the VE to assume that a person of Plaintiff's vocational characteristics was limited to lifting 15 to 20 pounds, fit for sedentary to light jobs but had to avoid repetitive bending, lifting, working in cramped or awkward positions, kneeling, stooping, couching, or working overhead. (R. at 68.) This hypothetical question is supported by substantial evidence. The VE testified that he could perform the jobs of grocery store cashier, food sales clerk and supervisor manager. (*Id.*) The ALJ posed a hypothetical question to the vocational expert that adequately reflected the nature and severity of Plaintiff's impairments as borne out by substantial evidence in the record. Therefore, the ALJ's hypothetical questions were proper and the VE's opinion that a substantial number of jobs existed in the national economy which Plaintiff could perform is supported by substantial evidence.

26.     Plaintiff objects to the ALJ's finding that he has the residual functional capacity to return to his past work. A review of the record establishes that substantial evidence supports the

ALJ's determination that Plaintiff can perform the full range of light work. Plaintiff admits that these jobs are classified as requiring a light exertional level. (Pl.'s Reply Br. at 5.) The VE testified that Plaintiff was able to perform his past relevant work as a food sales clerk, cashier and checker. (R. at 70-72.) Plaintiff's residual functional capacity, taken together with the findings of the vocational experts, provide substantial evidence that Plaintiff can perform his past relevant work. Even if Plaintiff cannot perform the full range of light work, his ability to perform his past relevant work is sufficient to compel a finding a "no disability" at Step Four of the sequential evaluation.

27.     The ALJ's finding that Plaintiff is not disabled because he can return to his past relevant work is supported by substantial evidence and is in accordance with the law.

## RECOMMENDED DISPOSITION

The ALJ applied the correct legal standards and the decision is supported by substantial evidence. I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed April 27, 2000, be denied, the decision of the ALJ affirmed, and this case dismissed. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**